IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL A. KARMOLINSKI, II,

Plaintiff,

v.

EQUIFAX INFORMATION SERVICES LLC, a foreign corporation, EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation, TRANS UNION LLC, a foreign corporation, and CITIBANK SOUTH DAKOTA, N.A., a foreign corporation,

Defendants.

Civ. No. 04-1448-AA

OPINION AND ORDER

---

Michael C. Baxter
Justin M. Baxter
Baxter & Baxter LLP
8835 S.W. Canyon Lane, Suite 130
Portland, OR 97225
Attorneys for plaintiff

Donald E. Bradley
Musick, Peeler & Garrett LLP
650 Town Center Drive, Suite 1200
Costa Mesa, CA 92626

Jennifer L. Bouman
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway, Suite 1900
Portland, OR 97205
Attorneys for defendant Trans Union LLC

AIKEN, Judge:

Plaintiff filed suit against defendants alleging willful and negligent violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681a *et seq.* Plaintiff's claims against defendants Equifax Information Services, Experian Information Solutions, and Citibank South Dakota have been resolved, leaving Trans Union as the sole remaining defendant. Trans Union now moves for summary judgment against plaintiff's claims for willful violations of the FCRA. The motion is granted, in part.

## I. BACKGROUND

In March 2001, plaintiff applied for and obtained a Visa credit card from Associates Credit Card Services (Associates). At the time, plaintiff was nineteen years old and employed by Safeway grocery stores as a security guard.

Plaintiff lost his job and accumulated over $1007 in debt on his Associates Visa card by December 2001. Despite receiving past due notices from Associates, plaintiff did not contact Associates regarding his missed payments or the status of his account. Plaintiff's debt eventually was referred to Enterprise Recovery Systems (ERS), a collection agency that contracted with Associates to collect on delinquent credit accounts.

After referral of plaintiff's account to collection in December 2001, plaintiff made payments to ERS toward his Associates credit card debt. During this time period, Associates was acquired

by defendant Citibank.

On June 21, 2002, plaintiff made a final payment of $508.00 to ERS. Plaintiff had obtained a loan on his truck from Reliable Credit to pay the balance on his Associates/Citibank credit card account, and Reliable Credit issued a check for $508.00 payable jointly to plaintiff and ERS. Plaintiff endorsed the check and sent it to ERS.

Later in 2002, plaintiff could not be included in an auto loan obtained by his wife, and in May 2003 plaintiff again was denied credit. Plaintiff obtained his credit report and discovered that a past due amount was reported under his Associates/Citibank credit card account. Plaintiff contacted ERS and asked for a letter confirming that the account had been paid in full. On May 23, 2003, ERS responded with the following letter:

> This letter will serve as evidence that Enterprise Recovery Systems Inc[.] Acting [sic] for Associates Credit Card Services and is authorized to service the above-mentioned account.
>
> Your account balance has been satisfied as of 6-21-02. Please keep this letter in a safe place it is your evidence that the above-mentioned account balance has been paid off[.]

The letter from ERS referenced "Client Associates Credit Card Service," plaintiff's account number, and a balance of $1007.43.

After receiving the ERS letter, plaintiff did not forward it to Citibank or any credit reporting agency. In fact, plaintiff did not provide Citibank with information regarding his payments to ERS

at any time prior to filing suit.

In early 2004, plaintiff obtained a credit report when attempting to obtain a home loan. The report still showed an outstanding balance of $507 on plaintiff's Associates/Citibank credit card.

On April 23, 2004, plaintiff submitted a notice of dispute form with defendant Trans Union to dispute the past due amount reported under his Associates/Citibank credit card account. Trans Union is a national credit reporting agency that provides consumer credit reports to subscribers and creditors who utilize the information to make credit related decisions. Trans Union obtains account information from its subscribers and includes this information in credit reports. With his dispute form, plaintiff enclosed a copy of the check issued from Reliable Credit to plaintiff and ERS. The check was marked "non negotiable" and did not refer to plaintiff's Associates account, either by name or account number.

On April 27, 2004 Trans Union sent a Consumer Dispute Verification Form (CDV) to Citibank and requested verification of the account information disputed by plaintiff. The CDV did not make reference to plaintiff's claim that the account had been paid or to the copy of the check issued by Reliable Credit. Instead, the CDV requested that Citibank verify the current balance, update the original loan amount, the scheduled monthly payment amount, the

actual payment amount, the amount past due, the current balance, and the original charge-off amount.

On May 1, 2004 Citibank responded to Trans Union's CDV and indicated that the past due amount on plaintiff's Associates/Citibank credit card had been charged off as bad debt. The same day, Trans Union sent a corrected version of plaintiff's credit report to him, although the information regarding the Associates/Citibank account remained the same.

On September 21, 2004, plaintiff again wrote Trans Union and disputed the information reflected under his Associates/Citibank account. Plaintiff provided his Associates credit card account number and stated that the account had been paid in full. Plaintiff included the May 2003 letter from ERS and stated that the letter was proof that the account had been satisfied.

On September 29, 2004, Trans Union responded that it could not accept the documentation provided by plaintiff and that it would re-contact the credit provider to verify the account information provided to Trans Union. According to Steve Reger, Director of Trans Union's Consumer Relations and Fraud Victim Assistance Department, the ERS documents were not accepted because they were over one year old and originated from a third party.

Trans Union sent another CDV to Citibank indicating that plaintiff was disputing the Associates/Citibank account information. The CDV did not reference the letter from ERS or

plaintiff's claim that he had paid off the account through payment to ERS as an authorized representative. Instead, the CDV stated that the consumer "[c]laims company will change. Verify all account information."

On October 6, 2004, Citibank provided Trans Union with updated information regarding plaintiff's Associates/Citibank account. Citibank stated that it had no record of any payment made by plaintiff to satisfy the debt, and that the debt was "charged off as bad debt" as of October 2004. Citibank also indicated that the high amount owed by plaintiff on the account was $1,007 rather than the $507 previously reported.

On or about October 6, 2004, Trans Union sent an updated consumer disclosure to plaintiff indicating the results of its investigation.

On October 6, 2004, plaintiff filed the instant action.

In late October 2004, Citibank instructed Trans Union to delete the delinquent account from plaintiff's credit report, and Trans Union deleted the account.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

II. DISCUSSION

The FCRA is a comprehensive statutory scheme that seeks to ensure the "[a]ccuracy and fairness of credit reporting" through a variety of means. 15 U.S.C. § 1681. Trans Union is a "consumer reporting agency" (CRA) within the meaning of the FCRA and is subject to its statutory requirements. Id. § 1681a(f). A CRA that

negligently violates the provisions of the FCRA may be held liable for actual damages, costs, and attorney's fees. Id. § 1681o. A CRA that willfully violates the FCRA also may be held liable for statutory and/or punitive damages. Id. § 1681n.

Plaintiff alleges that Trans Union willfully and negligently failed to comply with the FCRA by reporting an inaccurate past due amount under his Associates/Citibank account, even after plaintiff had disputed the accuracy of the report and gave Trans Union contradictory information. Specifically, plaintiff alleges that Trans Union: 1) failed to implement reasonable procedures to assure maximum possible accuracy of the information reported under 15 U.S.C. § 1681e(b); 2) failed to conduct a reasonable investigation of plaintiff's dispute as required under § 1681i; and 3) refused to disclose credit report information to plaintiff as required by § 1681g.

Trans Union moves for summary judgment on plaintiff's claims that it willfully violated the FCRA. Trans Union maintains that plaintiff cannot establish, as a matter of law, that any alleged failure to comply with the FCRA was "willful."

The United States Supreme Court recently addressed what conduct constitutes "willful" violations of the FCRA. Rejecting the contention that a willful failure to comply with the FCRA requires a showing of intentional conduct, the Court held that willful conduct includes the reckless disregard of duties under the

FCRA as well as intentional violations of the FCRA. Safeco Ins. Co. of America v. Burr, 127 S. Ct. 2201, 2209-10 (2007). In so ruling, the Court adopted the common law definition of recklessness: "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 2215 (internal quotation marks and citation omitted).

> Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

Id.

Even under the rather murky standard articulated by the Supreme Court, I find that - with one exception - plaintiff presents no evidence that Trans Union recklessly disregarded its duties under §§ 1681e(b) and 1681i.

Under 15 U.S.C. § 1681e(b), a CRA must follow reasonable procedures to assure the maximum possible accuracy of credit information. However, § 1681e(b) does not impose strict liability for an inaccurate credit report; an agency may avoid liability if it followed "reasonable procedures to assure maximum possible accuracy" but nonetheless included inaccurate information in a consumer's credit report. See Dennis v. BEH-1, LLC, 485 F.3d 443, 446 (9th Cir. 2007); Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995).

Plaintiff argues that Trans Union committed a willful

violation of § 1681e(b) by not providing creditors with copies of all documents and information received by consumers in disputing credit report information and by failing to contact third parties who possess information relevant to such disputes.[1] To establish a willful violation under Safeco, plaintiff must show that Trans Union's failure to institute such procedures is an unreasonable interpretation of § 1681e(b) and created a substantially higher risk of violating § 1681e(b) than would a merely negligent interpretation.

I find that Trans Union's failure to adopt blanket policies of contacting third parties, such as ERS, and providing creditors with copies of all documents received from consumers cannot be considered willful failure to comply with § 1681e(b). Trans Union representatives testified that in some circumstances, it might forward documents received from a consumer to a creditor during its investigation, depending on the veracity and relevance of the documents. See Deposition of Steve Reger, pp. 33, 44, 51-52 (attached to Declaration of Justin M. Baxter). As succinctly stated by the Seventh Circuit:

Whether the credit reporting agency has a duty to go

---

[1]In his responsive brief, plaintiff does not explain with specificity how Trans Union's action violated § 1681e(b). See Plaintiff's Memorandum in Opposition, pp. 14-17. However, plaintiff asserts that Trans Union could have provided Citibank with the ERS documents and contacted ERS "at virtually no cost." Plaintiff's Memorandum in Opposition, p. 15. Therefore, the court presumes plaintiff argues that Trans Union should have implemented such procedures.

> beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

Henson v. CSC Credit Services, 29 F.3d 280, 287 (7th Cir. 1994).

Further, while the FRCA requires a CRA to provide a creditor with relevant information received from a consumer when investigating a dispute, it does not dictate the manner in which the information must be provided. 15 U.S.C. § 1681i(a)(2)(B). Plaintiff points to no authority that a credit reporting agency must provide a creditor with copies of documents received from a consumer. See Safeco, 127 S. Ct. at 2216. In the absence of such authority, I cannot find that Trans Union's failure to implement such blanket procedures created a substantially high risk of violating § 1681e(b). Whether Trans Union should have forwarded the ERS documents to Citibank or contacted ERS is better addressed in the context of its duty to investigate disputed credit information.

Under the FCRA, if a consumer directly notifies a CRA of a disputed item in a credit report, the CRA must "reinvestigate" the current status of the disputed item or delete the item from the credit report within thirty days. 15 U.S.C. § 1681i(a)(1). In conducting its reinvestigation, the CRA must give notification of the dispute to the person or creditor who furnished the information

and provide "all relevant information regarding the dispute that is received by the agency from the consumer." Id. § 1681i(a)(2)(B).

Plaintiff argues that Trans Union recklessly disregarded its duty to reinvestigate, because it failed to provide Citibank with all relevant information regarding his dispute. Plaintiff's maintains that Trans Union should have forwarded to Citibank copies of the check from Reliable Credit and the letter from ERS or informed Citibank of these documents, even though plaintiff himself did not forward these documents or take action to resolve the dispute with Citibank.

I find that plaintiff presents no evidence that Trans Union willfully violated § 1681i by failing to provide Citibank with information regarding the check from Reliable Credit in response to plaintiff's April 2004 notice of dispute. It is undisputed that plaintiff submitted only a copy of this check with his first notice of dispute, and he did not explain the relevance of the check or how it satisfied his debt with Associates/Citibank. The check was issued from Reliable Credit - a third party unrelated to Associates or Citibank - to plaintiff and ERS, also an unrelated third party. Notably, the check did not refer to plaintiff's Associates/Citibank account in any way, either by name or account number, and it was marked "non-negotiable." As a result, Trans Union did not possess information that the check from Reliable Credit was in any way related to plaintiff's Associates/Citibank account. Therefore, no

genuine issue of material fact suggests that Trans Union recklessly disregarded its duty to provided Citibank with all "relevant" information, or that Trans Union knew or should have known that failing to forward or reference the check from Reliable Credit in response to plaintiff's first notice of dispute would violate the investigation requirements under § 1681i.

However, I cannot make the same finding with respect to Trans Union's actions in response to plaintiff's September 2004 notice of dispute. Along with his second notice, plaintiff enclosed the letter from ERS, who claimed to have authority to service plaintiff's Associates credit card account and indicated that the account had been paid in full. Although the ERS letter referenced plaintiff's Associates account rather than Citibank, it included the account number, which is the same number contained in plaintiff's credit report. Thus, as of plaintiff's second notice of dispute, Trans Union had information connecting ERS to plaintiff's Associates Credit Card account and indicating that the Associates account had been paid in full.

While it may be questionable whether Trans Union willfully violated § 1681i by failing to provide Citibank with this information, it remains a question of fact that cannot be resolved by this court on summary judgment. See Cushman v. Trans Union Corp., 115 F.3d 220, 226-27 (3d Cir. 1997). Therefore, Trans Union's motion for summary judgment is denied with respect to

plaintiff's § 1681i claim based on his September 2004 notice of dispute.

Finally, plaintiff alleges that Trans Union willfully violated the consumer disclosure requirements of 15 U.S.C. § 1681g(a), because it failed to provide him with updated credit reports as requested in January and May of 2005. See Amended Complaint, pp. 2-3. I note that as of October 6, 2004, plaintiff had filed suit against Trans Union and was represented by counsel. However, neither party presented argument or factual information relevant to this claim. Therefore, it cannot be resolved on summary judgment.

## IV. CONCLUSION

Trans Union's Motion for Partial Summary Judgment (doc. 117) is GRANTED with respect to plaintiff's claims alleging willful violations of 15 U.S.C. § 1681e(b) and § 1681i based on Trans Union's conduct in response to plaintiff's April 2004 notice of dispute. Trans Union's motion is denied with respect to plaintiff's claims alleging willful violations of 15 U.S.C. § 1681g and § 1681i based on Trans Union's conduct in response to plaintiff's September 2004 notice of dispute.

IT IS SO ORDERED.

Dated this 28 day of August, 2007.

/s/ Ann Aiken
Ann Aiken
United States District Judge